UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Ocala Division

| | | |
|---|---|---|
| NCEBAKAZI NTONI,<br>605 West Silver Springs Place,<br>Ocala, FL 34475<br>Plaintiff,<br><br>v.<br><br>DELVA MONIQUE CHARLEMAGNE,<br>2623 SW 20th Avenue,<br>Ocala Florida 34471<br><br>Defendant. | ) | Civil Action No. |

## PLAINTIFF'S ORIGINAL COMPLAINT

Gabriela Perez-Dumois, Esq. Blacksten Zelaya & Perez, PLLC 2514 Hollywood Blvd., Suite 308, Hollywood, Florida 33020, Ph: 754-799-4400, Email: gpd@bzplegal.com , Local Counsel for Plaintiff, and Tamunotonte Fenny, Esq., Attorney for Plaintiff, JEELANI LAW FIRM, PLC, 3701 W. Algonquin Road, Ste. 630, Rolling Meadows, IL 60008, Ph: 312-767-9030, Facsimile: 312-549-9981, Email: tonte@jeelani-law.com.

## INTRODUCTION

COMES NOW NCEBAKAZI NTONI (hereinafter "Plaintiff NTONI" or "Plaintiff") by and through the undersigned attorney, in the above cause, and states as follows:

1. This is a lawsuit for financial support under the United States Citizenship and Immigration Services ("USCIS") Form I-864A, Contract Between Sponsor and Household Member ("Contract").

2. The Affidavit of Support requirement was enacted by the United States Congress in 1996 to ensure that family-sponsored immigrants would have access to a minimum level of financial support sufficient to meet their basic living needs and to prevent such immigrants from becoming public charges. Under the statutory framework, if the primary sponsor does not meet the financial eligibility requirements of Form I-864, the sponsor may either execute a contract with a qualifying household member using Form I-864A Contract Between Sponsor and Household Member, or secure a joint sponsor who meets the requisite income threshold.

3. Through the enactment of the Affidavit of Support requirement under section 213A of the Immigration and Nationality Act (8 U.S.C. § 1183a), Congress expressly intended that family-based immigrant petitioners—not the American taxpayer—serve as the financial safety net for newly admitted immigrants. See H.R. Rep. No. 104-469, pt. 1, at 125 (1996) (stating that the revised affidavit of support is designed to 'ensure that immigrants do not become public charges and that their sponsors—rather than the public—bear the financial burden').

4. The Affidavit of Support constitutes a legally binding contract between the sponsor and the U.S. government, with the sponsored immigrant recognized as a third-party beneficiary.

5. Plaintiff NTONI is the intended third-party beneficiary of a Form I-864A Contract Between Sponsor and Household Member signed by her mother-in-law, Defendant CHARLEMAGNE.

6. Defendant CHARLEMAGNE served as Plaintiff NTONI's immigration co-sponsor, yet she has failed to meet the minimum financial support obligations required under the Form I-864A Contract Between Sponsor and Household Member and Form I-864 Affidavit of Support, beginning from the time when Plaintiff NTONI entered the United States as a lawful permanent resident, continuing throughout her marriage to Defendant's son, and persisting during their current period of separation.

7. Plaintiff NTONI has experienced estrangement from her spouse since June 1, 2025.

8. Through this action, Plaintiff NTONI seeks to hold Defendant accountable for her contractual obligations and to compel compliance with the financial responsibilities imposed by the Affidavit of Support and governing federal law.

**PARTIES**

9. Plaintiff NCEBAKAZI NTONI is a citizen of Eastern Cape, South Africa, and for purposes of the instant action, she is a resident of Marion County, Florida. She is a lawful permanent resident of the United States.

10. Defendant DELVA MONIQUE CHARLEMAGNE is a U.S. citizen and the co-sponsor in Plaintiff NTONI's immigration case. For purposes of the instant action, Defendant CHARLEMAGNE is a resident of Marion County, Florida. As

further detailed below, Defendant CHARLEMAGNE served as Plaintiff NTONI's co-sponsor by executing Form I-864A Contract Between Sponsor and Household Member [**EXHIBIT A**], thereby entering into a legally binding contract to provide Plaintiff NTONI with financial support at a level no less than 125% of the federal poverty guidelines, beginning on the date Plaintiff NTONI obtained lawful permanent resident status.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the federal Immigration and Nationality Act. See 8 U.S.C. § 1183a(e)(1).

12. This Court has personal jurisdiction over Defendant CHARLEMAGNE because, by executing the Form I-864A Contract Between Sponsor and Household Member, she consented to the jurisdiction of any court with subject matter jurisdiction over claims brought under the Affidavit. See 8 U.S.C. § 1183a(a)(1)(C).

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), in that this is the district in which Defendant CHARLEMAGNE resides.

14. Venue is further proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that this is the district in which a substantial part of the events or omissions giving rise to the claim occurred, specifically, the damages Plaintiff NTONI suffered by virtue of Defendant CHARLEMAGNE's breach of contract.

## BACKGROUND AND FACTUAL ALLEGATIONS

### A. Form I-864A Contract Between Sponsor and Household Member

15. Since 1882, federal law has barred the admission of individuals deemed likely to become a "public charge." See Act of Aug. 3, 1882, 22 Stat. 214.

16. The current immigration statute, which has been in effect throughout all relevant times in this matter, continues to prohibit the admission of immigrants who are likely to become public charges. See 8 U.S.C. § 1182(a)(4).

17. To overcome this ground of inadmissibility, family-based immigrant visa applicants are generally required to submit an Affidavit of Support. See 8 U.S.C. § 1182(a)(4)(C). Under the statutory framework, if the primary sponsor does not meet the financial eligibility requirements of Form I-864, the sponsor may either execute a contract with a qualifying household member using Form I-864A Contract Between Sponsor and Household Member or secure a joint sponsor who meets the requisite income threshold.

18. Only a limited group of family-based immigrants are exempt from this requirement, as identified in 8 C.F.R. § 213a.2(a)(2)(ii). These include: (A) self-petitioners under the Violence Against Women Act; (B) certain immigrants with petitions filed before December 19, 1997; (C) individuals credited with 40 qualifying quarters of work under Title II of the Social Security Act; (D) children admitted under 8 U.S.C. § 1181(a) and 8 C.F.R. § 211.1(b)(1); and (E) children who automatically acquire U.S. citizenship under 8 U.S.C. § 1431.

19. At all times relevant to this case, the Affidavit of Support has been mandatory for marriage-based immigrant visa applicants. When the U.S. citizen or lawful permanent resident spouse does not satisfy the financial eligibility criteria

under Form I-864, Affidavit of Support, the petitioning sponsor must obtain a joint sponsor or co-sponsor to support the foreign beneficiary's immigration to the United States by having the joint sponsor or co-sponsor execute either Form I-864 or I-864A. Under the Form I-864A Contract Between Sponsor and Household Member, the primary sponsor may enter into a contract with a household member where the household member commits to providing the required financial support to the immigrant beneficiary.

20. Once signed, the Form I-864A Contract Between Sponsor and Household Member constitutes a legally binding contract between the sponsor and the U.S. government. See 8 U.S.C. § 1183a(a)(1)(B).

21. By signing, the sponsor, co-sponsor, or joint sponsor agrees to provide the Intending immigrant with sufficient financial support to maintain an income at or above 125% of the Federal Poverty Guidelines for the applicable household size. See 8 U.S.C. § 1183a(a)(1)(A).

22. For purposes of the Affidavit of Support, "income" refers to the individual's total income (or adjusted gross income in the case of IRS Form 1040EZ filers) as reported for U.S. federal income tax purposes, including joint returns. See 8 C.F.R. § 213a.1.

23. The Federal Poverty Guidelines (commonly known as the "poverty line") are published annually in the Federal Register by the U.S. Department of Health and Human Services. Pursuant to these guidelines, Plaintiff NTONI is entitled to the following level of support from the date she became a lawful permanent resident

through her current period of estrangement from her U.S. citizen spouse. Furthermore, Defendant CHARLEMAGNE remains obligated to provide financial support by virtue of her execution of Form I-864A Contract Between Sponsor and Household Member, as a co-sponsor. Under these guidelines, a co-sponsor is required to maintain the intending immigrant—such as a sponsored spouse—at an income level of at least 125% of the federal poverty line.

a. 2025, Fed. Reg. 5917 (Jan. 15, 2025). For a household size of one in the 48 contiguous states and the District of Columbia, this equates to $19,562.50 annually in 2025, based on the poverty guideline of $15,650, or $1,630 monthly. [EXHIBIT B].

24. The level of support required under the Affidavit is based on the poverty line Applicable to the sponsored immigrant's state of residence during each year in which support is owed.

25. The sponsored immigrant is a third-party beneficiary of the Form I-864 Affidavit of Support and Form I-864A Contract Between Sponsor and Household Member, and accordingly may enforce the sponsor's or co-sponsor's obligations in court. See 8 U.S.C. § 1183a(a)(1)(B); 8 C.F.R. § 213a.2(d).

26. The sponsored immigrant is not required to make a prior demand for support before initiating legal action to enforce the Affidavit. See 8 C.F.R. § 213a.4(a)(2).

27. By signing the Affidavit, the sponsor, or co-sponsor, as in the instant case, consents to the personal jurisdiction of any federal or state court with subject matter

jurisdiction over a claim to enforce the Affidavit's obligations. See 8 U.S.C. § 1183a(a)(1)(C).

28. The co-sponsor also certifies under penalty of perjury that they have read, understood, and accepted the obligations under the Affidavit of Support, without mental reservation or intent to evade those responsibilities.

29. The sponsor and co-sponsor further agrees to notify the U.S. government of any change in address within 30 days, by filing Form I-865. See 8 U.S.C. § 1183a(d).

30. The co-sponsor's legal obligation under the Form I-864A Contract Between Sponsor and Household Member begins when the immigrant obtains lawful permanent resident status based on an application supported by the Affidavit. See 8 C.F.R. § 213a.2(e)(1).

31. The co-sponsor remains bound by the Affidavit until one of five specified "Terminating Events" occurs.

32. The first terminating event occurs when the sponsored immigrant becomes a U.S. citizen. See 8 C.F.R. § 213a.2(e)(2)(i)(A).

33. The second terminating event is when the immigrant earns, or is credited with, 40 qualifying quarters of work under the Social Security Act. See 8 U.S.C. § 1183a(a)(3)(A); 8 C.F.R. § 213a.2(e)(2)(i)(B).

34. The third terminating event occurs if the immigrant ceases to be a lawful Permanent resident and departs the United States. See 8 C.F.R. § 213a.2(e)(2)(i)(C).

35. The fourth terminating event occurs if the immigrant becomes subject to a

removal order and is subsequently granted adjustment of status in removal proceedings based on a new Affidavit of Support, if required. See 8 C.F.R. § 213a.2(e)(2)(i)(D).

36. The fifth and final terminating event occurs upon the death of the sponsored immigrant. See 8 C.F.R. § 213a.2(e)(2)(i)(E).

37. A Form I-864A Contract Between Sponsor and Household Member is Deemed executed once it is signed and submitted to either USCIS or the Department of State in support of an intending immigrant's application. See 8 C.F.R. § 213a.2(a)(B)(ii).

38. Upon execution, the Form I-864A Contract Between Sponsor and Household Member becomes a binding contract between the sponsor or co-sponsor and the U.S. government, for the benefit of the sponsored immigrant. See 8 C.F.R. § 213a.2(d).

39. The sponsor or co-sponsor's obligation to provide support under the Affidavit begins when the intending immigrant obtains lawful permanent resident status based on an application that included the Affidavit. See 8 C.F.R. § 213a.2(e)(1).

## B. Plaintiff's Immigration to the United States

39. Plaintiff NTONI and Defendant CHARLEMAGNE's son were married virtually on June 6, 2022.

40. Following their marriage, Jaquan Anania Charlemagne, Plaintiff NTONI's

now estranged spouse, initiated the process to sponsor her immigration to the United States by filing Form I-130, Petition for Alien Relative. Because he did not meet the income requirements to qualify as a sponsor under Form I-864, Affidavit of Support, he relied on his—his mother, Defendant CHARLEMAGNE to complete Form I-864A, Contract Between Sponsor and Household Member.

41. On August 20, 2023, Defendant CHARLEMAGNE signed Form I-864A, Contract Between Sponsor and Household Member as part of Plaintiff NTONI's immigrant visa case. [**EXHIBIT A**].

42. Plaintiff NTONI's eligibility to file the immigrant visa application was based entirely on Defendant CHARLEMAGNE's Form I-864A Contract Between Sponsor and Household Member; without it, she would not have qualified for the requested benefit.

43. Plaintiff NTONI did not fall within any of the exemption categories listed in 8 C.F.R. §213a.2(a)(2)(ii) that would excuse submission of an Affidavit of Support.

44. A copy of the executed Form I-864A Contract Between Sponsor and Household Member is attached as [**EXHIBIT A**], as contained in Plaintiff NTONI's Alien File.

45. Defendant CHARLEMAGNE submitted the Contract Between Sponsor and Household Member in support of Plaintiff NTONI's immigrant visa application.

46. Upon submission of the Form I-864A Contract Between Sponsor and Household Member Plaintiff NTONI's receipt of an immigrant visa permitting her entry into the United States as a lawful permanent resident, the Form I-864A

Contract Between Sponsor and Household Member was considered executed and took effect as a legally enforceable contract. See 8 C.F.R. § 213a.2(a)(B)(ii); 8 C.F.R. § 213a.2(d).

47. Plaintiff NTONI entered the United States on May 15, 2025.

48. In support of the Affidavit, Defendant CHARLEMAGNE provided proof of income, including federal income tax filings submitted to the Internal Revenue Service.

49. Plaintiff NTONI was granted unconditional permanent resident status effective on or around May 15, 2025.

**C. <u>Defendants' Breach of Contract</u>**

50. Defendant CHARLEMAGNE's obligations under the Form I-864A Contract Between Sponsor and Household Member began on May 15, 2015.

51. Plaintiff NTONI's lawful permanent resident status was granted based on an Application that included the Form I-864A Contract Between Sponsor and Household Member signed by Defendant CHARLEMAGNE, serving as a co-sponsor.

52. The Affidavit of Support was properly executed and, pursuant to 8 C.F.R. § 213a.2(a)(2)(i)(B) and 8 C.F.R. § 213a.2(d), constitutes a legally enforceable contract.

53. Defendant CHARLEMAGNE has failed to make any payments of support as required under the terms of the Form I-864A Contract Between Sponsor and Household Member.

54. In 2025, 125% of the federal poverty guideline for a one-person household is

$19,562.50, annually. Plaintiff NTONI has had no income since May 2025, when she entered the United States . **[Exhibit B]**.

55. Consequently, Plaintiff NTONI has been unlawfully deprived of the financial support required under the Affidavit of Support and Form I-864A Contract Between Sponsor and Household Member, since her admission to the United States in 2025. As a direct and proximate result of Defendant CHARLEMAGNE's failure to provide such support, Plaintiff has incurred substantial living expenses, including the costs associated with caring for her 19-month-old child.

**D. <u>Fact Concerning Terminating Events</u>**

56. No event has occurred that would constitute a "Terminating Event" as defined in the Affidavits of Support.

57. The **First Terminating Event** has not occurred because Plaintiff NTONI has not acquired U.S. citizenship.

58. The **Second Terminating Event** has not occurred because Plaintiff NTONI has neither worked nor earned credit for forty (40) qualifying quarters under the Social Security Act.

59. The **Third Terminating Event** has not occurred because Plaintiff NTONI has not both lost lawful permanent resident status and departed the United States.

60. The **Fourth Terminating Event** has not occurred because Plaintiff NTONI is neither subject to a final order of removal nor has he applied for and

obtained adjustment of status in removal proceedings based on a new affidavit of support.

61. The **Fifth Terminating Event** has not occurred because Plaintiff NTONI remains alive.

62. Accordingly, Defendants CHARLEMAGNE's obligations under the Affidavit of Support remain in full force and effect.

**COUNT I**

**Breach of Contract**

63. All prior paragraphs are re-alleged as if fully stated herein

64. By executing the Form I-864A Contract Between Sponsor and Household Member, Defendant CHARLEMAGNE entered into an express written contract with the United States Government pursuant to 8 U.S.C. § 1183a.

65. Plaintiff NTONI is an intended third-party beneficiary of the Form I-864A Contract Between Sponsor and Household Member.

66. As a third-party beneficiary, Plaintiff NTONI has standing to enforce the terms of the Affidavit of Support.

67. Under the express terms of the Form I-864A Contract Between Sponsor and Household Member, Defendant CHARLEMAGNE agreed to provide financial support necessary to maintain Plaintiff NTONI at an income level not less than 125% of the federal poverty guideline for her household size.

68. Defendant CHARLEMAGNE's contractual obligation to provide such support commenced on May 15, 2025, when Plaintiff NTONI became a lawful permanent resident of the United States.

69. All conditions precedent to Defendants CHARLEMAGNE's performance under the Affidavit of Support were satisfied as of that date.

70. Defendant CHARLEMAGNE has materially breached her contractual obligations by failing to provide the income support required.

71. As a direct result of this breach, Plaintiff NTONI has suffered damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that the Court grant the following relief:

a. Entry of judgment in favor of Plaintiff and against Defendants on all causes of action asserted herein;

b. An award of actual damages in the total amount of $13, 041.33 (or $1,630.16 per month) covering the period from May 15, 2025 through December 31, 2025;

c. A judicial declaration that Plaintiff is entitled to continued financial support from Defendant CHARLEMAGNE in the amount of 125% of the applicable poverty guideline, less actual income, until the occurrence of a Terminating Event;

d. An order of specific performance compelling Defendant to make monthly support payments in accordance with Paragraph 3 above, with such payments due by the fifth calendar day of each month and to be deposited into the trust account of Plaintiff's legal counsel**;**

e. An award of attorneys' fees and costs pursuant to 8 U.S.C. § 1183a(c) and the fee-shifting provisions contained in the Affidavit of Support;

f. Leave to amend this Complaint to conform to the evidence presented at trial;

g. Such other and further relief as the Court deems just and equitable under the circumstances.

Date: October 27, 2025

Respectfully submitted,

/s/ Gabriela Perez-Dumois
**Gabriela Perez-Dumois, Esq.**
**Fla. Bar No. 118378**
**Of Counsel for Jeelani Law Firm**
**Blacksten, Zelaya & Perez**
**2514 Hollywood Blvd., Suite 308**
**Hollywood, FL 33020**
**Tel./Fax: 754-799-4400**
***Local Counsel for Plaintiff***

/s/ Tamunotonte Fenny
**Tamunotonte Fenny, Esq.**
**JEELANI LAW FIRM, PLC**
**3701 W. Algonquin Road, Ste. 630**
**Rolling Meadows, IL 60008**
**tonte@jeelani-law.com**
**Phone:(312) 767-9030**
**Fax: (973) 317-8732**
***Non-resident Attorney for Plaintiff***